```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Oliver Thomas

    v.                                                            Civil No. 16-cv-012-SM

Federal Bureau of Prisons et al.[1]


**REPORT AND RECOMMENDATION**

    Plaintiff Oliver Thomas, an inmate at the Federal Correctional Institution, Berlin, New Hampshire ("FCI-Berlin") has filed a complaint (doc. no. 1) alleging violations of his federal rights. The complaint is before the court for preliminary review to determine, among other things, whether Thomas has stated any claim upon which relief might be granted. See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(1)(B).


**Preliminary Review Standard**

    In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson

---

[1] The defendants named in the complaint (doc. no. 1) are: the Federal Bureau of Prisons ("BOP"); Federal Correctional Institution, Berlin, New Hampshire ("FCI-Berlin") Warden E. L. Tatum; FCI-Berlin Trust Fund Supervisor D. Richmond; FCI-Berlin Corrections Officers/Laundry Supervisors Joey Paul and M. Vigneault.

v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

## Background

On May 29, 2014, at 6:20 a.m., Thomas, was in the FCI-Berlin Laundry, where he had been employed since February 14, 2013.  The previous day, there had been an institutional lockdown, and, as a result, one of the FCI-Berlin Laundry Supervisors, Corrections Officer ("C.O.") M. Vigneault, had done the laundry that day.  On the morning of May 29, Thomas told Vigneault that several inmates were in the lobby complaining about their laundry from the day before and requesting that their laundry be redone.

Vigneault reacted in what Thomas describes as a "very hostile and very unprofessional" manner.  Doc. No. 1, at 3. Vigneault stated that Thomas, who had never had an absence, a negative performance review, or an incident report related to his Laundry job, was "becoming a total 'fuck up,'" and that he was going to make sure that Thomas lost his job and his "Pay

Grade One" pay.[2]  Id.  Thomas, an African-American, asserts that Vigneault then "began using racial and sexual [sic] charged insults as he [h]as done in the past fifteen (15) months that plaintiff worked for him."  Id.

Shortly after that interaction with Vigneault, Thomas was called into the Laundry Supervisor's office, and at that time, FCI-Berlin C.O. Joey Paul, with Vigneault present, asked Thomas if he had been talking about the officers' behavior.  When Thomas stated that he had not, Paul "then instructed the plaintiff to leave laundry, stating that he did not need any more niggers."  Id. at 4.  Thomas alleges that he was terminated from his position at the Laundry, in part, due to Paul and Vigneault's racial discrimination against him, and in part, in

---

[2]"Pay Grade One" is the highest BOP pay grade for inmates:

> The BOP has four pay grades for inmates assigned to jobs in institutions under its control.  The lowest level is Pay Grade Four and the highest is Pay Grade One.  There are a very limited number of Pay Grade One positions in any given institution, with only five percent of the inmates at any institution being permitted to be assigned to that pay grade.

Williams v. Fed. Bureau of Prisons & Parole Comm'n, 85 F. App'x 299, 302 (3d Cir. 2004).  Thomas states that, at the time the events relevant to this action occurred, he was the only prison worker in the FCI-Berlin Laundry at Pay Grade One.

retaliation for plaintiff's statement that he intended to report the treatment he had received from Paul and Vigneault to prison officials.

During the fifteen months Thomas was employed in the FCI-Berlin Laundry, he states that he was regularly subjected to poor treatment that was racially or sexually motivated by Paul and Vigneault, such as:

- Vigneault called Thomas an "uppity nigger," a "nigger," "stupid," told Thomas to "suck his dick,", and that he wanted to "fuck plaintiff in his "ass because [Thomas] was a black "faggot."

- Paul called Thomas a "punk, asshole, bitch, female, stated "that his balls had [a] higher I.Q. than [Thomas's]," "invit[ed] [Thomas] to his privates area," and wondered aloud what he could expect from "Obama's kind."

- Duffy Striker, a Caucasian inmate with a lower pay grade than Thomas, earned more money in Laundry than Thomas did on several occasions;

- Caucasian inmates working in Laundry received bonus pay for the month May 2014 that Thomas did not receive, despite working there until May 29;

- When Striker left the Laundry to work in the prison commissary, defendants gave Thomas that inmate's position, but when the Caucasian inmate was reassigned to Laundry, Paul told Thomas to relinquish the clerk position to the Caucasian inmate, or lose his job, stating that Thomas "was not a smart enough nigger";

- Paul and Vigneault directed Thomas to lie to FCI-Berlin officials during inspections of the Laundry to hide safety concerns, stating that Thomas was a "porch monkey and to do

   as he was told."

- When Thomas was fired from the Laundry, Paul or Vigneault told Thomas he would have to "suck his dick" to keep his job.  Paul then told Thomas to "get his black ass out."

Id.

   Thomas reported Paul and Vigneault's mistreatment of him to the prison's Special Investigation Unit ("SIS").  In June 2014, Thomas contacted the FCI-Berlin Trust Fund Supervisor, D. Richmond, to complain about the loss of his Laundry job and to request reinstatement to that job, with back pay.  Thomas alleges that Richmond lied to Thomas about the reason he had been fired and did not respond to Thomas's requests for restoration to his Laundry job and back pay.  Richmond also informed Thomas that although an SIS investigation was being conducted, Thomas would not be informed of the investigation's results.  Thomas claims that Richmond's actions in relation to these incidents were motivated by racial discrimination against Thomas.

### Discussion

I. **Claims to be Served**

   The following claims for damages, asserted under Bivens v. Six Unknown Named Fed. Narc. Agents, 403 U.S. 388 (1971), may

proceed:

    1.    Defendants Vigneault and Paul violated Thomas's Fifth Amendment equal protection rights by discriminating against him on the basis of his race by:

        a.    firing Thomas from his job at the FCI-Berlin Laundry on the basis of his race;

        b.    paying Thomas less than white inmates and/or denying Thomas bonuses afforded to white inmates, when the white inmates had a lower pay grade than Thomas; and

        c.    demoting Thomas to give a white inmate Thomas's preferential work assignment on the basis of Thomas's race.

    2.    Defendants Vigneault and Paul violated Thomas's First Amendment right to petition the government for a redress of grievances by firing Thomas from his job at the FCI-Berlin Laundry in retaliation for Thomas's stated intention to report Vigneault's and Paul's sexually-charged and racially discriminatory behavior to prison officials.

    3.    Thomas alleges that defendants Vigneault and Paul, on two occasions, directed Thomas to lie to prison officials and American Correctional Association auditers during inspections, to hide improper practices that were taking place under Vigneault's and Paul's supervision, by threatening to fire Thomas if he did not lie as instructed, in violation of Thomas's First Amendment free speech rights.

In an Order issued simultaneously with this Report and Recommendation, the court directs service of these three claims on defendants Vigneault and Paul.

## II. <u>Verbal Harassment Claims</u>

Thomas alleges that defendants violated his Fifth Amendment

Due Process rights by discriminatorily engaging in sever sexually and racially charged verbal harassment during the fifteen months Thomas worked in the FCI-Berlin Laundry. Plaintiff cannot state a claim for relief under § 1983 based on derogatory language or verbal threats and harassment. See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." (footnote and citations omitted)). Accordingly, the district judge should dismiss Thomas's verbal harassment claims.

### III. Fair Labor Standards Act Claim

Thomas asserts claims under the Fair Labor Standards Act ("FLSA"), alleging that he was denied appropriate pay. FLSA, however, does not apply to prisoners who work inside the prison, for the prison. See Smith v. Dart, 803 F.3d 304, 314 (7th Cir. 2015); Castle v. Eurofresh, Inc., 731 F.3d 901, 906-07 (9th Cir. 2013); Wilkerson v. Samuels, 524 F. App'x 776, 779 (3d Cir. 2013). Accordingly, Thomas's FLSA claims should be dismissed.

**IV.   Title VII Claim**

Thomas asserts that his right not to be discriminated against on the basis of his race at his federal prison job is protected by Title VII, 42 U.S.C. § 2000e.  "Prisoners working in prison industries are not 'employees' under Title VII and thus it does not, [sic] apply to them."  Simon v. Fed. Prison Indus., Inc., No. 03-10792-JLT, 2003 U.S. Dist. LEXIS 27268, at *7 n.7, 2003 WL 26128191, at *2 n.7 (D. Mass. July 15, 2003) (citation omitted).  Accordingly, to the extent Thomas seeks relief under Title VII, that claim should be dismissed.

**V.   Claims Asserted on Behalf of Other Inmates**

In his complaint, Thomas describes a situation in which a Caucasian inmate was fired from the Laundry for stealing, and that job was not filled for two months, after which time the same white inmate was rehired to the position.  Thomas states that there were African-American and Hispanic inmates available and eligible to fill the petition at the time the Caucasian inmate was fired who Paul and Vigneault did not hire.  Thomas, acting pro se, cannot assert the rights of other inmates in this action.  See 28 U.S.C. § 1654; LR 83.2(d).  Accordingly, these claims should be dismissed.

**VI.   Other Named Defendants**

    A.   Trust Fund Supervisor A. Richmond

Thomas alleges that FCI-Berlin Trust Fund Supervisor A. Richmond lied to Thomas, and denied Thomas reinstatement to his Laundry job with back pay, on the basis of racial discrimination.  Stripped of legal conclusions about race discrimination, the complaint contains no facts to suggest that Richmond's behavior was motivated by racial animus or was otherwise discriminatory.  Accordingly, Thomas's claims against Richmond should be dismissed from this action, and Richmond should be dropped as a defendant.

    B.   Warden E. L. Tatum and Bureau of Prisons

Thomas has not alleged any facts indicating that either Warden Tatum or the BOP have, themselves, acted, or failed to act, in a manner that violated Thomas's rights.  Without such a showing, supervisory prison officials are not liable for the acts of their subordinates, based solely on their supervisory authority over, or even awareness of, those acts.  See Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011); see also Iqbal, 556 U.S. at 676.  Accordingly, the claims asserted against Tatum and the BOP should be dismissed from this action, and those defendants should be dropped from this case.

## Conclusion

For the foregoing reasons, the district judge should dismiss Thomas's claims: against defendants Tatum, the BOP, and Richmond; and asserting verbal harassment, and violations of FLSA and Title VII, and his claims asserting violations of the rights of other inmates, for failure to state a claim upon which relief can be granted. Defendants Tatum, the BOP, and Richmond should be dropped from this action, as no viable claim remains pending against them.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).

_____
Andrea K. Johnstone
United States Magistrate Judge

May 16, 2016

cc: Oliver Thomas, pro se