UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Oliver Thomas

    v.                                    Case No. 16-cv-12-SM
                                                Opinion No. 2019 DNH 153

Joey Paul and M. Vigneault

**O R D E R**

Before the court is defendants' Supplemental Motion for Summary Judgment (Doc. No. 77). Plaintiff, Oliver Thomas, objects. See Doc. No. 79.

**Background**

Thomas alleges violations of his constitutional rights while he was an inmate at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"). Since filing this action, he has been transferred to FCI Forrest City Medium, in Arkansas.

Thomas, who is African American, filed a complaint in federal district court on January 6, 2016, alleging that while employed in the prison laundry at FCI Berlin he was subjected to racial discrimination and violations of his First Amendment right to free speech. In its preliminary review pursuant to 28 U.S.C. § 1915(e)(2), the court construed Thomas's Complaint as asserting three types of claims:

1

In Claim 1, Thomas alleges that defendants, two FCI Berlin laundry room supervisors, Corrections Officer ("C.O.") Joey Paul and C.O. M. Vigneault, violated his Fifth Amendment right to equal protection by: (a) firing him because of his race; (b) paying him less than they paid white inmates and denying him a bonus paid to white inmates; and (c) demoting him so his position could be given to a white inmate.

In Claim 2, Thomas asserts that defendants violated his First Amendment right to petition the government by firing him in retaliation for threatening to report their racially and sexually motivated behavior to prison officials.

And in Claim 3, Thomas claims that defendants violated his First Amendment right to free speech by coercing him to lie to safety inspectors, by threatening to fire him if he told the truth about improper practices in the laundry. See July 13, 2016 Order (Doc. No. 11) (approving May 16, 2016 Report and Recommendation ("R&R") (Doc. No. 5)).

Thomas seeks reinstatement with full benefits, back pay, compensatory damages, punitive damages, declaratory relief, and other unspecified injunctive relief. The court construed Thomas's damages claims as asserted against Paul and Vigneault in their individual capacities under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

In 2017, defendants moved to dismiss Thomas's claims for failure to state a claim and failure to exhaust administrative remedies. The court denied the motion without prejudice as to the exhaustion argument. See July 17, 2017 Order (Doc. No. 54) (approving June 21, 2017 R&R (Doc. No. 53)). Defendants then filed a Motion for Summary Judgment, focusing on Claims 1 and 2. (Doc. No. 64).

The court denied the Motion for Summary Judgment without prejudice to defendants' ability to refile a similar dispositive motion addressing four issues identified by the court. See Sept. 10, 2018 Order (Doc. No. 71). The court appointed counsel to represent Thomas for the purpose of responding to any dispositive motion filed by defendants in response to the Sept. 10, 2018 Order. See Sept. 10, 2018 Order (Doc. No. 72); Oct. 5, 2018 Order (Doc. No. 73).

Defendants have filed a supplemental motion for summary judgment (Doc. No. 77), and Thomas, through counsel, has filed an objection (Doc. No. 79). This matter is ripe for review.

**Summary Judgment Standard**

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." Block Island Fishing, Inc. v. Rogers,

3

844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit."  Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).  Consequently, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact."  Perez v. Lorraine Enters., 769 F.3d 23, 29–30 (1st Cir. 2014).  In other words, "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more, is not enough to stave off summary judgment."  Tobin v. Fed. Express Corp., 775 F.3d 448, 451–52 (1st Cir. 2014).  See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## Discussion

Thomas seeks damages, injunctive relief, and declaratory relief on each of his claims, namely, his First Amendment

4

compelled speech claim, alleging he was compelled to lie to workplace safety inspectors upon the threat of being fired (Claim 3); his First Amendment retaliation claim, alleging a retaliatory job termination (Claim 2); and his Fifth Amendment equal protection claims, alleging race discrimination in his compensation (Claim 1(a)), his demotion (Claim 1(c)), and his job termination (Claim 1(b)).  Defendants move for summary judgment on each of those claims, arguing that the Bivens doctrine does not provide a damages remedy in Thomas's circumstances, and that Thomas presently lacks standing to obtain injunctive relief.[1]

I.   Availability of *Bivens* Remedy

The Bivens doctrine allows a plaintiff to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities.  See DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008).  An action under Bivens serves as a limited "federal analog to [42 U.S.C.] § 1983 suits against state officials." Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011).

---

[1]Defendants also argue that Thomas failed to exhaust his available administrative remedies.  As the Bivens issue is dispositive, this court does not address the exhaustion issue.

5

Courts presented with Bivens claims must first consider whether the claim presents a new context for applying Bivens. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1859-60 (2017) (test for determining if Bivens context is new). A court must decline to expand Bivens into a new context if "there are special factors counselling hesitation in the absence of affirmative action by Congress," Abassi, 137 S. Ct. at 1857 (internal quotation marks and citations omitted), taking into consideration such factors as whether "alternative methods of relief are available" to the plaintiff, id. at 1863 ("when alternative methods of relief are available, a Bivens remedy usually is not").

A.  New Context

The first step in addressing Thomas's Equal Protection and Free Speech claims requires this court to determine whether those claims in this case present new contexts for applying Bivens. "If the case is different in a meaningful way from previous Bivens cases, . . . then the context is new." Abassi, 137 S. Ct. at 1859.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of

6

> potential special factors that previous Bivens cases
> did not consider.

Id. at 1860.

### 1. First Amendment Claims

Thomas's First Amendment claims -- alleging that defendants fired him in retaliation for his stated intent to report their sexually charged comments and racial discrimination and alleging that they forced him to lie about safety issues in the laundry -- arise in a meaningfully different context than the three cases in which the Supreme Court has recognized an implied cause of action for damages for constitutional violations. See generally Abassi, 137 S. Ct. at 1854-55 (citing Bivens; Davis v. Passman, 442 U.S. 228 (1979); and Carlson v. Green, 446 U.S. 14 (1980)). The Supreme Court has never recognized a Bivens remedy for First Amendment claims, and it has affirmatively declined to extend a Bivens remedy to claims invoking the First Amendment. See Wood v. Moss, 572 U.S. 744, 757 (2014) (acknowledging that the Supreme Court has never recognized an implied damages remedy under the First Amendment); Bush v. Lucas, 462 U.S. 367, 390 (1983) (declining to extend Bivens to federal employee's First Amendment retaliatory demotion claim). Moreover, although the Supreme Court has extended the Bivens remedy to prisoners asserting one type of prison conditions claim, it has done so

explicitly only for Eighth Amendment medical care claims.² See Abbasi, 137 S. Ct. at 1855 (citing Carlson, 446 U.S. at 19). There is no Supreme Court case like Thomas's involving First Amendment claims arising out of the prison workplace, and no First Circuit case presenting like circumstances in which a Bivens remedy has been inferred; it is clear that Thomas's First Amendment retaliatory job termination claim and First Amendment compelled speech claim (Claims 2 and 3) both present new contexts for Bivens.

### 2. Fifth Amendment Discrimination Claims

Similarly, Thomas's Fifth Amendment race discrimination claims present a new context for Bivens. In Davis v. Passman, the Supreme Court held that an administrative assistant to a member of Congress could bring a damages remedy against the Congressman for workplace gender discrimination. 442 U.S. at 248-49; see also Lipsett v. Univ. of P.R., 864 F.2d 881 (1st Cir. 1988) (following Davis in finding Bivens remedy for gender

---

²This court need not consider whether the Supreme Court or other controlling authority has implicitly expanded the reach of Bivens remedies to other types of prison conditions claims that are patently distinguishable from those at issue in this case. Cf. Bistrian v. Levi, 912 F.3d 79, 90-92 (3d Cir. 2018) (finding, in light of Farmer v. Brennan, 511 U.S. 825 (1994), that pretrial detainee's Fifth Amendment failure-to-protect claim was not a new context for Bivens).

8

discrimination claims of V.A. doctor). Thomas's equal protection claims arise out of a prison workplace setting, "a highly regulated environment with little similarity to employment for a Congressman," Stile v. United States, No. CV 16-3832 (RMB), 2019 WL 287072, at *4, 2019 U.S. Dist. LEXIS 9884, at *8–*9 (D.N.J. Jan. 22, 2019), or the surgical residency at issue in Lipsett. Prisoners, unlike government employees outside of a prison setting, lack the compensation protections, and the right to obtain, maintain, and quit jobs when they will. See generally U.S. Const. amend. XIII; see also Dupont v. Saunders, 800 F.2d 8, 10 (1st Cir. 1986) (per curiam) ("[P]risoners have no vested property or liberty rights to either obtain or maintain prison jobs." (citations omitted)). Federal inmates are employed and compensated "solely by legislative grace and primarily for their own benefit and rehabilitation." Stile, 2019 WL 287072, at *4, 2019 U.S. Dist. LEXIS 9884, at *9; see also Sprouse v. Fed. Prison Indus., Inc., 480 F.2d 1, 4 (5th Cir. 1973) ("whatever right plaintiffs have to compensation is solely by congressional grace and governed by the rules and regulations promulgated by the Attorney General"). The prison workplace context here is thus meaningfully distinguishable from prior cases like Carlson and Davis and presents a new context for a Bivens remedy. See Stile, 2019 WL 287072, at *4, 2019 U.S. Dist. LEXIS 9884, at *13; Brown v.

Cooper, No. 18-219 (DSD/BRT), 2018 U.S. Dist. LEXIS 218544, at *33, 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018), R&R adopted, No. 18-219 (DSD/BRT), 2019 U.S. Dist. LEXIS 2159, 2019 WL 121943 (D. Minn. Jan. 7, 2019), appeal docketed, No. 19-1387 (8th Cir. Feb. 26, 2019); Alexander v. Ortiz, No. CV 15-6981 (JBS-AMD), 2018 U.S. Dist. LEXIS 45329, at *11-*12, 2018 WL 1399302, at *4 (D.N.J. Mar. 20, 2018) (prisoner's claims of race discrimination and retaliation in prison employment arise in a context "vastly different" from Davis), appeal docketed, No. 18-1778 (3d Cir. Apr. 13, 2018).

B.  Alternative Remedies and Special Factors

Defendants argue that special factors counsel against extending Bivens to plaintiff's claims under the First and Fifth Amendments.  The special factors inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  Abbasi, 137 S. Ct. at 1858.  "Special factors" may arise because some "feature of a case . . . causes a court to pause before acting without express congressional authorization."  Id.  Special factors have been found where "Congress has designed its regulatory authority in a guarded way, making it less likely

10

that Congress would want the Judiciary to interfere." Id. (citations omitted).

Since Abbasi, most courts considering the issue have determined that special factors counsel against inferring Bivens remedies for prisoners' free speech claims and equal protection claims, and courts considering claims arising out of a prison workplace context have uniformly declined to find a damages remedy available under Bivens.[3] This court has identified no case in which any court has found that there is a Bivens remedy for the type of prison employment retaliatory discharge, race

---

[3] See, e.g., Turner v. Doe, No. CV155942RBKAMD, 2018 U.S. Dist. LEXIS 83707, at *15, 2018 WL 2278096, at *6 (D.N.J. May 18, 2018) ("it should be left to the legislative and executive branches to determine whether an action for damages for a claim of racial discrimination exists in the prison-workplace environment" (citing Abassi and Alexander, 2018 WL 1399302, 2018 U.S. Dist. LEXIS 45329), aff'd on other grounds, No. 19-1030, 2019 U.S. App. LEXIS 20446, 2019 WL 3010286 (3d Cir. July 10, 2019); Rodriguez v. Hamel, No. CV157980NLHKMW, 2018 WL 2254557, at *4, 2018 U.S. Dist. LEXIS 83213, at *8 (D.N.J. May 17, 2018) ("prison housing and the prison workplace are special factors precluding the extension of Bivens" to inmate's First Amendment retaliatory transfer and job reassignment claims); see also Bistrian, 912 F.3d at 95-96 & n.25 (no Bivens remedy for pretrial detainee's First Amendment retaliation claim); Ajaj v. United States, No. 14-CV-01245-JPG-RJD, 2019 U.S. Dist. LEXIS 136473, 2019 WL 3804232, at *3 (S.D. Ill. Aug. 13, 2019) (no Bivens remedy for prisoner's First Amendment free exercise and retaliation claims); Vanaman v. Molinar, No. CV-17-00222-TUC-JGZ, 2018 U.S. Dist. LEXIS 168971, at *11, 2018 WL 4698655, at *4 (D. Ariz. Sept. 28, 2018) (no Bivens remedy for prisoner's First Amendment magazine censorship claim and Fifth Amendment equal protection claim).

11

discrimination, and work-related compelled speech claims Thomas asserts here.

Defendants point to Thomas's ability to obtain injunctive relief on his claims, at the outset of the case, as an alternative remedy that may be available in such circumstances, precluding a Bivens remedy. Such "'[a]lternative remedial structures'" can take many forms, "including administrative, statutory, equitable, and state law remedies." Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018) (citation omitted). To decide if the existence of alternative remedies is a "'convincing reason'" for a court to refrain from extending Bivens, courts consider whether the remedies provide "roughly similar incentives" for potential defendants to comply with federal constitutional provisions, "while also providing roughly similar compensation to victims of violations." Minneci v. Pollard, 565 U.S. 118, 130 (2012) (citations omitted). Although its deterrent effect may not be as great as that which could come from a personal capacity claim for damages, equitable "remedies that provide no compensation for victims and little deterrence for violators, such as injunctions and writs of habeas corpus," still "trigger the general rule that, 'when alternative methods of relief are available, a Bivens remedy usually is not.'" Farah v. Weyker, 926 F.3d 492, 502 (8th Cir. 2019) (emphasis in original) (quoting Abassi, 137 S. Ct. at

1863)).  The potential availability of injunctive relief at the outset of Thomas's case is one factor counselling against inferring a new damages remedy for his claims, as the possibility of reinstatement or court-ordered backpay could provide some measure of relief.  But cf. Alexander, 2018 WL 1399302, at *6, 2018 U.S. Dist. LEXIS 45329, at *16-*17 (neither writ of habeas corpus, nor injunction prohibiting future discrimination, nor statutes providing remedies for federal tort claims, for employment discrimination, and for prison work-related injuries provided adequate alternative relief as to inmate's claims of discrimination and retaliation in prison employment).

In circumstances where the BOP Administrative Remedy Program ("ARP") could provide some relief for the type of claims at issue, the ARP can also be deemed to be an "alternative remedial structure," Abbasi, 137 S. Ct. at 1858, that weighs against inferring a Bivens remedy.  See Stile, 2019 U.S. Dist. LEXIS 9884, at *16, 2019 WL 287072, at *6 (potential availability of pay adjustments through ARP counselled against finding a Bivens remedy for inmate's Fifth Amendment equal protection claims challenging the practice of docking his pay for time he spent away from his workstation awaiting distribution of his prescription medication).  The ARP, designed to allow inmates to seek formal review of any issues relating to

13

their confinement, allows for payroll corrections where appropriate. See Stile, 2019 WL 287072, at *6, 2019 U.S. Dist. LEXIS 9884, at *16.  Here, Thomas's workplace discrimination and retaliatory discharge claims are the type of claims for which relief through the ARP could provide monetary relief, roughly similar to the compensatory relief Thomas seeks for his unequal compensation, demotion, and job termination claims, see generally id.  Cf. Jerra v. United States, No. 2:12-cv-01907-ODW (AGRx), 2018 U.S. Dist. LEXIS 53512, at *14, 2018 WL 1605563, at *5 (C.D. Cal. Mar. 29, 2018) (ARP does not preclude Bivens remedy where inmate's First Amendment retaliation claims were "based on the fact the grievances he filed pursuant to the BOP's process resulted in retaliation").

Even without finding that the ARP's monetary remedy and the possibility of injunctive relief are the types of alternative remedial structures that preclude an inference of a Bivens remedy in this case, this court would find that the heavily regulated prison workplace setting for all of Thomas's First and Fifth Amendment claims, and the judicial restraint exercised in cases implicating the administration of prisons, are special factors that counsel against extending Bivens here.  "Prison administration is . . . a task that has been committed to the responsibility of . . . [the legislative and executive] branches, and separation of powers concerns counsel a policy of

14

judicial restraint." Turner v. Safley, 482 U.S. 78, 85 (1987). See also Abbasi, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis.").

Congress, in passing laws relating to the federal prison workplace, has granted considerable discretion to the BOP to regulate and administer prison employment, while exempting prison jobs from coverage under federal laws governing employment relations outside of the prison context, in light of the special status of inmate workers.[4] Congress created the BOP Federal Prison Industries program (known as "UNICOR") to provide authority for the industrial employment of federal inmates. See 18 U.S.C. §§ 4121-4129. Congress has delegated authority to the Attorney General to promulgate regulations to implement the statutes authorizing inmate pay for industrial work, special

---

[4]Inmates may not recover damages under federal statutes regulating compensation and prohibiting employment discrimination, as inmates are not deemed to be BOP "employees" for purposes of those statutes. See Wilkerson v. Samuels, 524 F. App'x 776, 779 (3d Cir. 2013) (per curiam) (unpublished) ("It is well established that a prisoner is not an employee under the Fair Labor Standards Act (FLSA), because the relationship is not one of employment, but arises out of the prisoner's status as an inmate."); Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991) (federal prisoner is not BOP employee under either Title VII or Age Discrimination in Employment Act because their relationship "arises out of [the prisoner's] status as an inmate, not an employee").

15

compensation for institutional work assignments, and compensation for work-related illnesses and injuries incurred in institutional and industrial worksites.[5] 18 U.S.C. § 4126(c)(4); 28 C.F.R. § 345.10.

Pursuant to that authority, the BOP regulates the inmate work program within each of its institutions. See 28 C.F.R. § 545.20. Each sentenced inmate who can work is assigned to an institutional, industrial, or commissary work program. See id. § 545.23. Each BOP warden is tasked with establishing an Institution Inmate Work and Performance Pay Committee to administer the institution's work and performance pay program. See id. § 545.22(a). BOP regulations govern inmate work/program assignments, work conditions, eligibility for performance pay, inmate vacations, special commendations, and BOP supervisory

---

[5] The Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126(c)(4), authorizes UNICOR to compensate inmates for "injuries suffered in any . . . work activity in connection with the maintenance or operation of the institution in which the inmates are confined." Id.; see also 28 C.F.R. § 301.101. Consistent with BOP's regulatory definition of a work-related injury, courts have concluded that IACA funds are not available to compensate inmates who allege claims of constitutional violations like Thomas's, see Alexander, 2018 U.S. Dist. LEXIS 45329, at *20, 2018 WL 1399302, at *6 (citing 28 C.F.R. § 301.102), the unavailability of alternative remedies alone does not preclude this court from finding that there are other special factors counselling hesitation against extending Bivens to Thomas's claims. See Alexander, 2018 WL 1399302, at *7, 2018 U.S. Dist. LEXIS 45329, at *20.

staff training, see id. §§ 545.23-545.31, among other work-related issues.

Given the heavily regulated nature of the prison workplace, the restraint courts must exercise when confronting issues affecting prison administration, and the potential availability of alternative forms of relief for claims like Thomas's, this court concludes that a Bivens remedy is not appropriately inferred as to any of Thomas's First Amendment compelled speech, First Amendment retaliation, and Fifth Amendment race discrimination claim.  Congress, and not the courts, is better situated to weigh the costs and benefits of creating a damages remedy for prison workplace misconduct like that alleged by Thomas.  Cf. Abbasi, 137 S. Ct. at 1857 (purpose of special factors inquiry is to determine if Congress, not the Judiciary, "is in the better position to consider if 'the public interest would be served' by imposing . . . 'new substantive legal liability'" (quoting Schweiker v. Chilicky, 487 U.S. 412, 426-427 (1988)) (citations omitted)).  Defendants' supplemental motion for summary judgment on all of Thomas's Bivens claims is thus properly granted.

II. Availability of Equitable and Declaratory Relief

Defendants have also moved for summary judgment on plaintiff's claims for equitable and declaratory relief.

Plaintiffs who request equitable remedies must demonstrate a "likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law."  O'Shea v. Littleton, 414 U.S. 488, 502 (1974); see also Rizzo v. Goode, 423 U.S. 362, 372 (1976) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects" (quoting O'Shea, 414 U.S. at 495-96).

Injunctive relief on Thomas's claims against Vigneault and Paul is no longer available to Thomas as he is now housed at another BOP facility.  See Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) (in the absence of claims for damages, "[a] prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer or release.").  There is no evidence before this court suggesting any realistic prospect that Thomas will be sent back to FCI Berlin or otherwise placed under Vigneault's or Paul's supervision in the future.  And plaintiff's argument is purely speculative that Thomas will again suffer the same type of race discrimination alleged in this case.  Accordingly, judgment as a matter of law on Thomas's claims for injunctive relief is warranted.

Thomas has also lost any legally cognizable interest in a declaration that defendants' actions were unconstitutional.  Cf. ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 53

(1st Cir. 2013) ("With limited exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is . . . not permissible as it would be merely advisory."). Accordingly, the court grants the Supplemental Motion for Summary Judgment as to Thomas's claims for injunctive and declaratory relief.

## **Conclusion**

For the foregoing reasons, the court GRANTS defendants' Supplemental Motion for Summary Judgment as to all of Thomas's claims for damages, injunctive relief, and declaratory relief (Doc. No. 77). The clerk is directed to enter judgment for defendants and close the case.

SO ORDERED.

                                          _____
                                          Steven J. McAuliffe
                                          United States District Judge

September 17, 2019

cc:   Marrielle B. Van Rossum, Esq.
      Terry L. Ollila, Esq.